NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 17a0121n.06

No. 15-4015

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Feb 23, 2017
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JAMES A. BRENSON, JR., | ) | |
| | ) | |
| Petitioner-Appellant, | ) | |
| | ) | **ON APPEAL** FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| JOHN COLEMAN, Warden, | ) | DISTRICT OF OHIO |
| | ) | |
| Respondent-Appellee. | ) | OPINION |
| | ) | |

BEFORE: NORRIS, GIBBONS, and ROGERS, Circuit Judges.

**ALAN E. NORRIS, Circuit Judge.** Ohio prisoner James Brenson, Jr., appeals the denial of his petition for a writ of habeas corpus, 28 U.S.C. § 2254. A jury convicted petitioner of aggravated murder and related charges. The district court granted a certificate of appealability ("COA") on the following issues: did the eight-year delay between the filing of the initial indictment and trial deny petitioner the right of due process; did the trial court's refusal to sever petitioner's trial from that of his co-defendant infringe any of his constitutional rights; did the State obtain petitioner's grand jury statements in violation of his right to counsel or through abuse of the grand jury process; and, finally, if proven, would any of these issues warrant habeas relief.

**I.**

This court reviews the district court's denial of habeas relief de novo. *Keys v. Booker*, 798 F.3d 442, 449 (6th Cir. 2015). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies in this case, "sharply limits the circumstances in which a federal

court may issue a writ of habeas corpus to a state prisoner whose claim was 'adjudicated on the merits in State court proceedings.'" *Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013) (quoting 28 U.S.C. § 2254(d)). Assuming an "on the merits" decision by a state court, a petitioner must show either that a state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law," or that the decision was "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). As the Supreme Court has observed, "If this standard is difficult to meet, that is because it was meant to be." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). "[A] state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 103. Finally, "a determination of a factual issue made by a State court shall be presumed to be correct." 28 U.S.C. § 2254(e)(1); *Adams v. Bradshaw*, 826 F.3d 306, 310 (6th Cir. 2016).

After his conviction, petitioner sought direct review in the Ohio Court of Appeals. *State v. Brenson*, No. 09-CA-18, 2010-Ohio-4645, 2010 WL 3784890, (Ohio App. 5 Dist. Sep. 28, 2010). The Ohio Supreme Court vacated and remanded to the court of appeals to correct an error that is not germane to this appeal. *State v. Brenson*, 128 Ohio St. 3d 396 (2011). In the end, petitioner received the same sentence.

Petitioner did not seek collateral review of his conviction in state court. Instead, he filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. A magistrate judge recommended that petitioner's motion for discovery be denied. The district court overruled petitioner's objections to the magistrate judge's recommendation, adopted the report, and

dismissed the petition. As already mentioned, it granted a COA on the four issues before us. This court declined petitioner's request to expand the scope of the COA.

## II.

We turn now to the merits of petitioner's claims, keeping in mind that we must give AEDPA deference to the last reasoned state court opinion that reached the merits of petitioner's claims. In this case we look to the Ohio Court of Appeals' decision cited above.

1. Due Process Violation Because of Delay

> A due process claim based on prosecutorial delay involves a two-pronged inquiry:
>
> > [T]he Government concedes that the Due Process Clause of the Fifth Amendment would require dismissal of the indictment if it were shown at trial that the pre-indictment delay in this case caused substantial prejudice to appellees' rights to a fair trial and that the delay was an intentional device to gain tactical advantage over the accused.

*United States v. Marion*, 404 U.S. 307, 324 (1971) (footnote omitted); *accord United States v. Lovasco*, 431 U.S. 783, 790 (1977). Determination of a due process violation because of delay "will necessarily involve a delicate judgment based on the circumstances of each case." *Marion*, 404 U.S. at 325. However, the Court has noted that "the Due Process Clause does not permit courts to abort criminal prosecutions simply because they disagree with a prosecutor's judgment as to when to seek an indictment." *Lovasco*, 431 U.S. at 790. Finally, "prosecutors are under no duty to file charges as soon as probable cause exists but before they are satisfied they will be able to establish the suspect's guilt beyond a reasonable doubt." *Id.* at 791.

Among other authorities, the Ohio Court of Appeals relied upon both *Marion* and *Lovasco* in analyzing this claim. It first found that petitioner had failed to establish actual prejudice:

> {¶ 65} In the case *sub judice,* we believe that Brenson's assertion that witnesses' memories have faded, that key evidence pertaining to the case is likely to have been lost and/or destroyed, and that current addresses and/or other contact

> information for key witnesses is not currently known to Brenson which may prejudice his efforts to effectively investigate this case and possible defenses available to him, are much too speculative and fail to rise to the level of concrete proof.

> {¶ 66} We find, therefore, that Brenson has failed to establish that the delay in bringing the indictment caused Brenson actual prejudice.

*Brenson*, 2010 WL 3784890, at \*10. The court went on to conclude that, even had petitioner shown actual prejudice, he failed to show "an intentional device on the part of the Government to gain a decided tactical advantage in its prosecution. . . . The lapse between the alleged incidents and the actual indictment was the result of investigative delay and the Government's efforts to make out its best case against Brenson." *Id.* (citation omitted).

As the opinion of the Ohio Court of Appeals recounts at length, the investigation of Mr. Herren's murder took a number of twists and turns. Obviously, it is always preferable that a prosecution—especially one for murder—be brought in as timely a fashion as possible. However, to prevail on his due process claim, petitioner must show actual prejudice due to the delay in prosecution and strategic use of the delay by the prosecution to gain a tactical advantage. *Marion*, 404 U.S. at 324. The Ohio Court of Appeals decision, to which we owe the deference imposed by AEDPA, 28 U.S.C. § §2254(d), concluded that petitioner had failed to establish entitlement to relief, and nothing in its reasoning strikes us as either contrary to established federal law or based upon an unreasonable interpretation of the facts.

2.  The Motion to Sever

Prior to trial, petitioner filed a motion to sever his trial from that of his co-defendant. The trial court denied the motion, and the Ohio Court of Appeals affirmed.

In denying the motion, the trial court observed that the decision lies within the discretion of the trial court. (Page ID 453) (citing *State v. Abbott*, 89 N.E.2d 147, 150 (Ohio 1949)); *United States v. Warner*, 690 F.2d 545, 552 (6th Cir. 1982). It went on to find that statements made by

defendant Allen, which petitioner claimed were unduly prejudicial, were not because they "do not implicate Brenson in any wrongdoing; thus, the statements are not made 'against' Brenson and the Sixth Amendment right to confrontation is not triggered." (Page ID 457.) Moreover, even if the two defendants had mutually antagonistic defenses, that fact is not prejudicial *per se*; a trial court has the discretion to tailor appropriate relief. *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993).

The Ohio Court of Appeals affirmed this judgment. The court began by noting that "[t]he law favors the joinder of defendants." *Brenson*, 2010 WL 3784890, at *10, ¶73. "[O]nly if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence" should a severance be granted. *Zafiro*, 506 U.S. at 539.

The Ohio Court of Appeals then reviewed the evidence that defendants contended made severance appropriate. *Brenson*, 2010 WL 3784890, at **12-13, ¶¶ 83-85. After doing so, the court concluded:

> [W]e find no evidence suggesting that Brenson and Allen intended to present, or did present antagonistic defenses at trial. Rather it is clear in the case at bar that both Brenson and Allen maintained that he had nothing to do with the murder.

*Id.* at *14, ¶93. The court also pointed out that the trial judge had given a lengthy limiting instruction to the jury which petitioner did not challenge. *Id.* at *16, ¶¶104-06.

Once again, we review the Ohio Court of Appeals conclusion through the deferential lens of AEDPA. As it noted, whether severance is appropriate lies within the discretion of the trial court, and the trial court gave appropriate limiting instructions, which juries are presumed to follow. Furthermore, the defenses mounted by the two defendants were not antagonistic; both men simply denied committing the crime but did not implicate each other. Nothing in this record suggests that the Ohio Court of Appeals decision meets the AEDPA standard.

3. Grand Jury Testimony in 2008

As noted, this prosecution took a number of odd twists and turns over the eight years between Mr. Herrell's murder and the start of trial. One of them involves petitioner's decision to testify before a grand jury in 2008 by invitation rather than by subpoena. In an added twist, a complaint was filed on the morning of this testimony charging him with the aggravated murder of Mr. Herrell. An hour or so later, petitioner appeared before the Delaware County Grand Jury. However, he was neither served with the arrest warrant, which had just issued, nor told of its existence. He was, however, given *Miranda* warnings at the outset of questioning. His grand jury testimony was later admitted against him at trial, and he now alleges that this testimony was obtained in violation of his Sixth Amendment right to counsel.

The Ohio Court of Appeals relied primarily on *Patterson v. Illinois*, 487 U.S. 285 (1988), to determine whether petitioner effectively waived his right to counsel. The right to counsel attaches to a person "regardless of whether the defendant is in custody, so long as adverse judicial proceedings have been initiated against him." *Brenson*, 2010 WL 3784890 at \*21, ¶ 137 (citing *Patterson*). However, "the initiation of adverse judicial proceedings does not erect an absolute bar to post-indictment police interrogation in the absence of counsel; rather, a defendant may be questioned where he knowingly and intelligently waives his right to counsel, thus establishing 'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* at \*22, ¶ 138 (quoting *Patterson*). *Patterson* concluded that, "As a general matter, . . . an accused who is admonished with the warnings prescribed by this Court in *Miranda* has been sufficiently apprised of the nature of his Sixth Amendment rights, and of the consequences of abandoning those rights, so that his waiver on this basis will be considered a knowing and intelligent one." *Patterson*, 487 U.S. at 296 (citation and footnote omitted).

The trial court and the Ohio Court of Appeals held that petitioner effectively waived his right to counsel before the grand jury. Moreover, he was aware of the nature of the charges, having "previously been indicted, arraigned, consulted counsel, and engaged in discovery prior to the dismissal of the previous indictment." *Brenson* at *23, ¶ 143.

Petitioner insists that he was entitled to counsel once a complaint issued. No one questions that he was entitled to counsel when testifying before the grand jury. However, petitioner contends that his waiver of counsel could not have been "knowing" because he was facing a charged offense that carried the death penalty. Under these unusual circumstances, relying on *Miranda* warnings ignores the gravity of the situation.

With respect to petitioner's grand jury appearance in 2008, the district court found "the State's actions here deeply concerning." (Page ID 4134.) The prosecutor knew that a complaint and arrest warrant had issued that morning charging petitioner with aggravated murder. Nevertheless, he permitted petitioner to testify without informing him of this development. In our view, this decision walks a fine ethical line between technical legality and the spirit of our criminal justice system, and we would urge prosecutors to approach that line with caution to ensure that an accused's rights are sufficiently protected.

Despite these reservations, the district court agreed that the Ohio Court of Appeals decision was not contrary to clearly established law. We agree. Given AEDPA deference and the Supreme Court's decision in *Patterson*, which guides the resolution of this issue, petitioner is not entitled to relief on this claim.

4. Abuse of the Grand Jury Process

The Ohio Court of Appeals rejected this argument for the same reasons that it rejected the related claim, to wit, that petitioner appeared by invitation, not by subpoena, and that he was

familiar with the prosecution, having appeared before a grand jury in 2002. *Brenson*, 2010 WL 3784890, at *24, ¶¶149-50.

Petitioner relies on *Maine v. Moulton*, 474 U.S. 159 (1985). In that case, the Supreme Court observed that "knowing exploitation by the State of an opportunity to confront the accused without counsel's being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity." *Id.* at 176. Unfortunately for petitioner, the facts of *Moulton* are not sufficiently similar to those in the instant case to render it persuasive.

We have already expressed our concerns about the prosecution's use of the grand jury process, but we agree with the Ohio Court of Appeals and the district court that petitioner is not entitled to relief.

**III.**

The judgment is **affirmed**.