THE STATE OF OHIO, APPELLANT, *v.* YOUNG ET AL., APPELLEES.

[Cite as State *v.* Young (1983), 5 Ohio St. 3d 221.]

(No. 82-535—Decided July 6, 1983.)

222

*Mr. John T. Corrigan,* prosecuting attorney, and *Mr. Donald C. Nugent,* for appellant.

*Mr. Robert J. Lewis,* for appellee Young.

*Starkoff & Starkoff Co., L.P.A., Mr. Harvey H. Starkoff* and *Mr. Scott R. Mergenthaler,* for appellee Walker.

GREY, J. The appellant's argument, in summary, is that although a defendant is entitled to his Sixth Amendment right of confrontation, hearsay

may be admitted against him if it falls within one of the exceptions to the hearsay rule and bears the indicia of reliability.

The state claims because Mabry's refusal to be sworn or answer any questions renders his prior testimony unavailable, it was permissible to read his prior testimony to the jury. The burden of establishing unavailability rests on the party offering the evidence. *State* v. *Smith* (1979), 58 Ohio St. 2d 344 [12 O.O.3d 313], vacated on other grounds (1980), 448 U.S. 902. Evid. R. 804 states in pertinent part:

"(A)   Definition of unavailability. 'Unavailability as a witness' includes situations in which the declarant:
"'* * *

"(2)   persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; * * *'"

While Mabry could be declared unavailable under Evid. R. 804 (A)(2), this is not the sole test. His testimony must meet one of the exceptions enumerated in Evid. R. 804 (B) before it can be admitted. Evid. R. 804 (B), reads in part:

"Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:

"(1)   Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability."

The testimony in question was taken at the hearing on Mabry's motion to suppress. Clearly, this is a preliminary hearing, within the purview of Evid. R. 804 (B)(1). But, before this testimony can be admitted, it "must satisfy the right to confrontation and exhibit indicia of reliability."

All the cases dealing with prior testimony of an unavailable witness revolve around the following two postulates. Hearsay is inadmissible because it violates the right of confrontation. Hearsay is inadmissible because it is unreliable.

The United States Supreme Court's ruling in *Ohio* v. *Roberts* (1980), 448 U.S. 56, held the admission of an unavailable witness' prior testimony at a defendant's trial did not violate the Sixth Amendment. Regarding the history of the Confrontation Clause, the court stated, at pages 63-64:

"The historical evidence leaves little doubt, however, that the Clause was intended to exclude some hearsay. See *California* v. *Green,* 399 U.S., at 156-157, and nn. 9 and 10; see also McCormick § 252, p. 606. Moreover, underlying policies support the same conclusion. The Court has emphasized that the Confrontation Clause reflects a preference for face-to-face confrontation at trial, and that 'a primary interest secured by [the provision] is the

right of cross-examination.' *Douglas* v. *Alabama,* 380 U.S. 415, 418 (1965). In short, the Clause envisions

" 'a personal examination and cross-examination of the witness in which the accused has an opportunity, not only of testing the recollection and sifting the conscience of the witness, but of compelling him to stand face to face with the jury in order that they may look at him, and judge by his demeanor upon the stand and the manner in which he gives his testimony whether he is worthy of belief.' *Mattox* v. *United States,* 156 U.S., at 242-243. These means of testing accuracy are so important that the absence of proper confrontation at trial 'calls into question the ultimate "integrity of the fact-finding process." ' *Chambers* v. *Mississippi,* 410 U.S. 284, 295 (1973), quoting *Berger* v. *California,* 393 U.S. 314, 315 (1969)."

Analyzing its earlier decisions in *California* v. *Green* (1970), 399 U.S. 149, and *Pointer* v. *Texas* (1965), 380 U.S. 400, the *Roberts* court concluded, at 69, that the Sixth Amendment only demands, " 'substantial compliance with the purposes behind the confrontation requirement.' "

In *Green, Pointer* and *Roberts,* the defendants were, at the minimum, afforded the *opportunity* to confront and cross-examine the declarant at the previous hearing. This was of particular importance to the *Roberts* court when it said, at pages 70-71:

"This passage and others in the *Green* opinion suggest that the *opportunity* to cross-examine at the preliminary hearing — even absent actual cross-examination — satisfies the Confrontation Clause. Yet the record showed, and the Court recognized, that defense counsel in fact had cross-examined Porter at the earlier proceeding. * * *

"* * *

"Counsel's questioning clearly partook of cross-examination as a matter of *form.* His presentation was replete with leading questions, the principal tool and hallmark of cross-examination. In addition, counsel's questioning comported with the principal *purpose* of cross-examination: to challenge 'whether the declarant was sincerely telling what he believed to be the truth, whether the declarant accurately perceived and remembered the matter he related, and whether the declarant's intended meaning is adequately conveyed by the language he employed.' " (Emphasis *sic.*)

This court, in *State* v. *Madison* (1980), 64 Ohio St. 2d 322 [18 O.O.3d 491], following the decisions in *Green* and *Roberts,* upheld the admission of the defendant's prior testimony at the defendant's trial. This court's decision was based upon the particular facts in *Madison.* As stated by this court at pages 329-330:

"The facts, in the instant cause, fall squarely within the guidelines as directed in *Green, supra,* and, more specifically, *Roberts, supra.* The record reveals that Roe was present and under oath at the preliminary hearing and that appellant had the same attorney for both the preliminary hearing and for trial. Furthermore, the appellant, by and through counsel, had the *opportunity* to cross-examine the witness. In fact, the witness was cross-examined

and even recross-examined concerning details of the robbery. In accordance with the other factors enunciated in *Green,* the preliminary hearing was properly recorded and was before a judicial officer.

"* * *

"These additional factors are the guarantee of trustworthiness or, more aptly described as the 'indicia of reliability,' which allow the testimony taken at the preliminary investigation to be used at trial." (Emphasis *sic.*)

The appellant argues that the statements of Mabry meet the indicia of reliability, and therefore ought to be admissible. The issue of confrontation is never met.

In this case there was a total lack of confrontation. Therefore, even the substantial compliance standards set forth in *Green* and *Roberts* are nonexistent. Defendants' attorneys were not present at the preliminary hearing, nor were they afforded the opportunity to be present or to decline to exercise this right. At defendants' trial, Mabry refused to answer any questions. To say defendants were afforded their right to confrontation is to disregard the facts, and the requirements of Evid. R. 804 (B)(1).

The weakness of appellant's argument can best be seen if considered in light of *Bruton* v. *United States* (1968), 391 U.S. 123. In *Bruton,* the United States Supreme Court held that where there are co-defendants, one who has confessed and one who has not, the co-defendants are entitled to separate trials and the one defendant's confession is not admissible against the other. This is the same result reached by this court years earlier in *State* v. *Abbott* (1949), 152 Ohio St. 228 [40 O.O. 282].

Were we to accept appellant's position here, we would eviscerate the holdings in *Bruton* and *Abbott,* as can be shown by the following circumstances. Where there are co-defendants, one of whom has confessed, the non-confessing defendant would be given a separate trial. If the trial of the non-confessor were scheduled first, the confessing defendant would be called as a witness. If, because he was still facing his own trial, such witness asserted his Fifth Amendment rights, he would be declared under Evid. R. 804 (A)(1) "unavailable," and his confession implicating the co-defendant would be admitted. If the confessing defendant's trial were scheduled first, we would have the same situation as in the case now before us.

Thus, in spite of the holdings in *Bruton* and *Abbott* requiring separate trials to protect the constitutional right of confrontation, the incriminating statement would always be admissible. *Bruton* and *Abbott* would be meaningless. We must therefore reject appellant's contention and hold that a statement by a co-defendant who is granted a separate trial may not be read into evidence at the trial of the other co-defendant where it defeats the right of confrontation. Evid. R. 804 (B)(1).

For all the foregoing reasons, we find the appellant's first proposition of law is without merit.

In its second proposition of law, the state argues that admission of the

co-defendant's statement was harmless error. A claim of harmless error always presents a dilemma for appellate courts.

When a claim of harmless error is raised, the appellate court must read the record and decide the probable impact of the error on the minds of the average jury. *Harrington* v. *California* (1969), 395 U.S. 250, 254.

This is the harmless error dilemma.

The ebb and flow of a trial is never accurately shown in a typewritten transcript. Just as a party must object to preserve a claim of error, the converse of this rule is that where a party insists on the introduction of certain evidence at trial, he has the burden to show its harmlessness on appeal. *Chapman* v. *California* (1967), 386 U.S. 18.

In determining the probable impact on the average jury, any claim of harmless error is somewhat incongruous because counsel insisted on its admission at trial, yet denigrates its importance on appeal.

The onus is on trial counsel to determine the necessity and constitutional ramifications in using certain evidence, and to prepare his trial strategy accordingly. Trial counsel must be made aware of our insistence on a trial free from error, harmless or not, as the desired result.

In applying the standard in *Chapman, supra,* and *State* v. *Lytle* (1976), 48 Ohio St. 2d 391 [2 O.O.3d 495], *i.e.,* was the error harmless "beyond a reasonable doubt," or did it "contribute to the accused's conviction," a reviewing court will look at the trial strategy as a factor in assessing the probable impact of constitutional error on the average juror. *Harrington, supra.*

In the case before us, the court of appeals found "the prosecutors strategically planned to secure the introduction of Mabry's confession implicating the * * * [defendants] by having him declared an unavailable witness * * *," and further found this "stratagem" had the impact of being "highly prejudicial." In spite of a substantial body of evidence establishing defendants' guilt, the court of appeals had no recourse but to reverse and order a new trial.

Simply put, not everything is admissible. A trial strategy which throws in everything but the kitchen sink may cause the reversal of an otherwise valid conviction.

Appellant's second proposition of law is not well-taken. The judgment of the court of appeals is affirmed, and this cause is remanded to the trial court for further proceedings consistent with this opinion.

*Judgment affirmed and cause remanded.*

STEPHENSON, SWEENEY, LOCHER and C. BROWN, JJ., concur.

CELEBREZZE, C.J., concurs in the syllabus and judgment.

HOLMES, J., dissents.

STEPHENSON, J., of the Fourth Appellate District, sitting for W. BROWN, J.

GREY, J., of the Fourth Appellate District, sitting for J. P. CELE-BREZZE, J.

CELEBREZZE, C.J., concurring. While I concur in the syllabus and judgment as set forth in the majority's opinion, I write separately to state my belief that this appeal may be decided solely upon an application of the Rules of Evidence.

Evid. R. 804 provides:

"(A)  Definition of unavailability. 'Unavailability as a witness' includes situations in which the declarant:
      * * *
"(2)  persists in refusing to testify concerning the subject matter of his statement despite an order of the court to do so; * * *
"* * *
"(B)  Hearsay exceptions. The following are not excluded by the hearsay rule if the declarant is unavailable as a witness:
"(1)  Former testimony. Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination. Testimony given at a preliminary hearing must satisfy the right to confrontation and exhibit indicia of reliability.
"* * *
"(3)  Statement against interest. A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject him to civil or criminal liability, or to render invalid a claim by him against another, that a reasonable man in his position would not have made the statement unless he believed it to be true. A statement tending to expose the declarant to criminal liability, whether offered to exculpate or inculpate the accused, is not admissible unless corroborating circumstances clearly indicate the truthworthiness of the statement."

In the case at bar, the record clearly establishes that Mabry was "unavailable" as that term is used in Evid. R. 804 (A)(2), given Mabry's refusal to testify when called to the stand despite being ordered to do so. Thus, if Mabry's confession satisfies any of the hearsay exceptions in Evid. R. 804 (B), the statement would not be excluded under the general rule that statements which constitute hearsay, like Mabry's, are inadmissible. However, in my view, Mabry's confession neither falls under Evid. R. 804(B)(1) nor (3) and, as such, is inadmissible.

As the majority correctly states, appellees' counsel were not present when Mabry made his confession at the suppression hearing. It therefore cannot be argued that an earlier opportunity to cross-examine Mabry concerning his confession was an adequate substitute for cross-examination at trial. This fact alone renders Evid. R. 804 (B)(1) inapplicable to Mabry's confession and would not allow for its admission.

The question remains whether Mabry's confession falls within the hearsay exception of Evid. R. 804 (B)(3). Appellant suggests that because Mabry's confession was a statement tending "to expose the declarant to criminal liability," the confession is admissible under this exception. I would agree that the portion of Mabry's confession in which he implicated himself would be admissible under this exception. However, *any* portion of Mabry's confession which implicated his co-defendants would not be a statement against Mabry's interest and, hence, would not be admissible under this exception. Thus, contrary to appellant's position, Mabry's confession, in its entirety, is not admissible under any recognized exception to the hearsay rule as embodied in this state's Rules of Evidence.

Consequently, under my analysis, the majority's treatment of the constitutional issues becomes unnecessary since the confession's admission is prevented by evidentiary rules. Had Mabry's confession been admissible, the questions concerning appellees' rights of confrontation would need to be addressed. Nonetheless, I concur in the determination that the trial court committed prejudicial error by allowing Mabry's confession to be read to the jury at appellees' trial.

HOLMES, J., dissenting. I dissent from the majority opinion on two bases. First, the introduction of the signed written statement of the recalcitrant witness here was not error. Second, even if erroneous, in light of the other overwhelming evidence introduced by the state in support of the charges against this defendant, it is harmless error.

The state has quite aptly framed what should be the holding in this case in its proposition of law, as follows:

"Where a witness who has been properly subpoenaed and is called as a witness in a criminal case refuses to answer any questions when examined and is without any privilege to refuse to respond and where the trial court's contempt power is meaningless inasmuch as the witness is serving a life term for aggravated murder and the witness has previously made a signed written statement concerning events that he was called to testify about and the two defendants on trial are co-defendants of the refusing witness and all three individuals had made previous statements already in evidence in direct conflict with the signed written statement of the witness, it is not error to permit the statement to be introduced into evidence."

When Mabry was called to the stand by the state, he refused to answer any questions put to him by the prosecutor, although admonished to do so by the trial court. The prosecutor argues that the state was indeed taken by sur-

prise at this refusal of their intended witness to testify. The trial court under such circumstances could determine Mabry to be a hostile witness, and allow the reading into evidence of the prior written statement of this intended witness.

The basic reason for the prohibition of the introduction of prior out-of-court statements of co-defendants is the absence of a right of confrontation and cross-examination of the one making the statement.

The right of confrontation and cross-examination is satisfied if the person making the out-of-court statement is available for cross-examination. *California* v. *Green* (1970), 399 U.S. 149; *United States* v. *Schwanke* (C.A 10, 1979), 598 F. 2d 575, 581; *Ohio* v. *Roberts* (1980), 448 U.S. 56. In *Green,* at 162, the court stated that "* * * where the declarant is not absent, but is present to testify and to submit to cross-examination, our cases, if anything, support the conclusion that the admission of his out-of-court statements does not create a confrontation problem." In any event, in my view there was a waiver of any denial of confrontation by the refusal of defense counsel to pose any questions to Mabry while he was on the stand.

The right to confront or cross-examine Mabry, by counsel for the appellees, was available in this instance. Mabry was in the courtroom and on the stand. Since he would not testify for the state, it is reasonable to assume that if asked questions by defense counsel, Mabry would have answered, and qualified or refuted the effectiveness of the material in his prior written statement introduced by the state.

However, counsel for both of the appellees on trial opted not to question Mabry. At the conclusion of the direct testimony, the record shows this colloquy between the trial court and appellees' counsel:

"THE COURT: Do you care to inquire of this witness on behalf of the defendant, Walker?

"MR. MARKSTROM: No Judge.

"THE COURT: On behalf of the defendant, Young?

"MR. MESROBIAN: One moment, if your Honor please.

"THE COURT: Take two.

"MR. MESROBIAN: No questions, your Honor.

"THE COURT: Let the record so indicate. That is all of this witness. Sir, you can step down from the witness stand."

Additionally, I believe that it was not error for the trial court to have admitted this statement in that it was an admission against interest of the declarant and, as such, an exception to the hearsay rule; and admissible particularly in light of the fact that the corroborating circumstances and the indicia of the trustworthiness of the statement were significant. The elements guaranteeing the trustworthiness of Mabry's statement here are:

1. It inculpated him in the crime.

2. It was made to two officers, Detectives Curdo and Kovacic, who testified to such at the trial.

3. It was given voluntarily at Mabry's request.

4. It was given after Mabry was completely advised of his rights.

5. It was reduced to writing and Mabry signed each page to the effect that he had read the material thereon and that it was true.

6. The major details contained in the statement were corroborated by other independent and disinterested witnesses.

Therefore, even though the written instrument is an out-of-court statement by Mabry, and would otherwise constitute inadmissible hearsay evidence, the evidence here may be admissible upon the bases that the statement is sufficiently trustworthy, and that the element of confrontation has been met.

As set forth in my opening premise, even though the allowance of the out-of-court prior written statement is considered error, it is harmless. The record firmly establishes the guilt of Young and Walker even in the absence of the written statement of Mabry. The court of appeals noted the overwhelming evidence against the defendants, but found that the zealousness of the prosecutor dictated reversal. I find no planned prosecutorial overkill in this record, but only an abundance of evidence in support of the state's charges of guilt upon which the jury did return such a verdict. The court of appeals should not have reversed the judgment upon such verdict.

Accordingly, I would reverse the judgment of the court of appeals.